Mr. Gable. Good morning, Your Honor. My name is Thomas Gable. I'm with the Southern District of Illinois as an Assistant Federal Public Defender. The question before the court today is whether or not the district court erred by applying an enhanced offense level for the felon in possession of a weapon. Counsel, could you raise your voice and perhaps speak a little more distinctly? No, it's not a question of microphones. It's a question of your voice. Unfortunately, Your Honor, I have a very bad cold right now. I'll try to speak up. Thank you very much. Based upon the fact the felon's co-conspirator's firearm was capable of accepting a large-capacity magazine. If you spoke more slowly, it might help us to hear it. The district court made no finding of the evidence that would support such a finding that it was foreseeable to the appellant that the co-conspirator's firearm would be capable of accepting... Counsel, let me tell you what my problem is with your argument. Your whole argument is based on the fact that this was the co-defendant's gun and your client didn't know anything about it. The problem that I have is that your client pleaded guilty to possessing that very gun. Your Honor, the reason he pled guilty was the fact that it was a conspiracy charge... I'm not really interested in the reason he pleaded guilty, but in the fact that he pleaded guilty. He did. Can somebody who pleads guilty to possessing a gun say, but don't allow this enhancement because I didn't know all the characteristics of the gun I have confessed to possessing? Well, Your Honor, it's interesting to note in Note 8B of 2K1.1, the... Yes, Your Honor. And that's how you've briefed this case. I understand that. The reason I'm pursuing this, however, is that that's not the basis on which your client was found to have possessed this gun. Your client pleaded guilty to possessing this gun. Yes, he did. And there was no caveat carved out, here's the problem in the plea, nothing, because this was like he pled straight up to all the counts, right? That's correct. There was no plea agreement. And there was no caveat or no carve-out saying that he didn't know that the Smith & Wesson was capable of a larger magazine or firing more than 15 bullets. Yes, Your Honor. There was no carve-out. No carve-out at that time at all. And the sentencing, everybody agreed, the government agreed that the gun was found near the co-defendant where he had been playing with something in his pants and he threw something towards the trash can. And my client's Glock was found in the car with my client. And did the government say that they acknowledged as he pled that he was not aware or that they would say, you would say for sentencing whether or not he knew it was capable of... No, Your Honor, they did not. That is a huge problem for my position. Yeah, it is. And when you look at the notes to 2K2.1 and Note 8, it talks about the fact that a weapon with a serial number that is scratched off does not require any knowledge. But does not address whether or not you need to know whether or not a weapon can have a large capacity magazine. That, of course, is partly to the fact that most pistols can have a large capacity magazine. And, you know, I say pistols, excuse me, most automatic weapons. A pistol, of course, cannot. But our position is that the weapon belonged to the co-defendant. And the co-defendant's knowledge, if you look at whether or not it was foreseeable, we did not have any reason to foresee that that weapon was a large capacity magazine. So you see the tension between what his plea is and then the position that he took. I am very much aware of it. Because in sentencing there was no specific finding by the district court with respect to the capacity of the Smith & Wesson. There was sort of an assumption in the government's position was there were a lot of hand-to-hand deals and there was a large quantity. I mean, that's really how the government, that was part of how they responded to it. That's correct, Your Honor. And this was 48 grams, 45 grams, which is 1.6 ounces, which in my mind is not a lot of drugs. I mean, maybe in the setting or the town that this occurred it was. It was near St. Louis. There wasn't a large amount of drugs per se. But then that doesn't help you if he's pledged. I mean, it's just problematic. Yes, Your Honor. One thing I could say, the judge in the case, the district judge, did rule that it was not a requirement for it to be foreseeable whether or not the gun was large capacity. It had to be foreseeable that the co-defendant would have a gun. This was a drug conspiracy. It was foreseeable that all people involved would have guns. Right. And looking back at the plea, I should have done a better job. I should have blocked out the fact that the weapon was co-defendant's and that the magazine was unknown to my client to be a large capacity. I didn't do it. It appears that everybody has a large, rather firm grasp on the issues here, so I'm not going to waste everybody's time. But I'll come back in response to Mr. Boyce. Thank you. Thank you. May it please the Court. Good morning. I'm Don Boyce here from Southern Illinois. The question we're parsing here this morning is whether or not the guidelines were calculated properly. In particular, the language of whether or not this is an offense that involved a firearm capable of accepting a large capacity magazine. This was a case where the police were acting on information about drug dealing in East St. Louis. They saw a car engaging in suspicious activity. A car chase ensued, a crash, people fled. They found some drugs, some other things related to making and packaging and selling drugs, and two guns. Okay, so I just want to ask you, there's no explicit finding by the District Court that the gun's capability of holding a large capacity magazine was reasonable foreseeable. It's just reasonably foreseeable that the co-conspirator would have a gun. That's correct, Your Honor. The issue of whether or not the law requires that higher standard, that Cherry would have needed to specifically know that the Smith & Wesson was capable of accepting a large capacity magazine, was not raised until sentencing, and it really wasn't even specifically raised at sentencing. Counsel made the argument in support of his PSR objection that Cherry didn't know the gun had a large capacity magazine. Counsel never said it is a legal requirement that Cherry know that the gun have a large capacity magazine. And what's your position on that? Do you think it's a legal requirement? Well, our first position is that... I understand your position for this case. I'm just asking a bigger question. We're on plain error because it wasn't raised. Right. As to, in other cases, if that were brought up, I don't think it's a fair reading of the guideline book to take the third prong of 1B1.3, which is talking about jointly undertaking criminal activity. It's talking about when someone's actions are, you know, imputed to someone else, and to say that that applies specifically to the characteristics in Section 2K2.1. The guideline book is not a book that reads like prose, obviously, but it also is a book that, unless there's a cross-reference or some reason to say that this phrase on page 22 modifies this page on 249, there's no reason to think that that phrase modifies that phrase. Well, how is this case different from imposing sentencing enhancements for quantity of drugs possessed by co-conspirators which require that the quantity be reasonably foreseeable? You know, because we require the quantity to be reasonably foreseeable, so shouldn't we require the capability of accepting large magazines to be reasonably foreseeable? Well, the Davidson case that's pointed out by counsel in his brief talks about cases that are drug dealing that's outside of the scope of what the defendant himself did. So these are deals that other defendants did without the knowledge of the defendant at trial. I guess your question is, if other drug dealing is part of the same course of conduct... Yeah, we can't attribute, you know, we can't attribute the drugs of one co-defendant to another unless it was reasonably foreseeable, and I'm just saying that's analogous to our situation. It's analogous. They are two different things. I think the drug analogy goes to the nature of the agreement. Was the agreement big enough to include these other quantities? So I think here you'd be saying, was the nature of this agreement such that it would reasonably... You would anticipate it, and what I'm saying is when you're dealing with 1.6 ounces, it might have a street value of $6,000. You make an argument that that's a large amount. You know, maybe depending on the community that's in, that could be a large amount, but I just saw that as not your strongest argument. Well, the way these guys were selling it, they had it broken down into tenth of a gram buttons, so they had 450 buttons worth of heroin. Right, but $15 and $20 a hit. But if you're going to engage in 450 different drug deals in a day, I would submit that is a lot of drug dealing. You're just doing a lot of it a little at a time. So I would submit it is foreseeable. I would say, though, to the extent that we're being blamed on appeal for not making a good record about that specific foreseeability, that goes right back to the standard of review. This is plain error. The defendant never argued that this standard even applied, so we can't very well be faulted for it. Right, and I wasn't trying to suggest blame or anything. I was just asking what your view would be on this reasonable foreseeability as it relates to the capacity of the firearm. And, of course, you can't be responsible if it hasn't been raised. That's right. My view is that it's a real stretch to read that requirement in 1B1.3 into that characteristic in 2K2.1, but I understand that there would be some basis, some analogous basis to take that approach from the drug context. So my primary argument at the district court, my primary argument now is basically what Judge Easterbrook said, is that you can sentence the defendant for the offense, what's in the indictment, or more broadly for the relevant conduct, which catches more conduct. In this case, the Smith & Wesson that contained the 17 bullets was listed in the indictment, and the defendant pled guilty to possessing it. So the government doesn't see a scenario in which he should not be sentenced for possessing the Smith & Wesson. Even going through the acrobatics of the guidelines, the Smith & Wesson would have been an enhancement under 2D for the drug counts for possessing a gun and furtherance of those drug counts. Those are grouped together with count 4, the felon in possession count, under the grouping rules. So really just under the four corners of the indictment approach to sentencing, the enhancement should apply. If for some reason this court were not to accept that approach and you want to go further and indulge the relevant conduct analysis, the point is that it should be foreseeable. And again, to the extent that there aren't specific findings, those are because the question wasn't raised below. So unless there are any other questions, I would just close with if you want to find whether or not the case involved a gun with a high-capacity magazine, that was the question, this case involved a gun with a high-capacity magazine, the defendant pled guilty to that. So the case should be affirmed. Thank you, Mr. Boyce. Mr. Gabel. Just a very quick follow-up, Your Honor. Your Honor, whether or not we waive or forfeited our argument, the government explicitly brought up the idea about foreseeability in its argument at trial court. The district judge brought it up, and as you know, in U.S. v. Billups. At sentencing. You mean at sentencing. It was brought up at sentencing. Yes, Your Honor. I'm sorry. That's all right. I just wanted to make sure. U.S. v. Billups, you all allow us to expand our arguments based upon what happened, and that's what happened here. Thank you. Thank you, Mr. Gabel. Mr. Boyce. The case is taken under advisement and the court will stand at recess.